IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**GARY R. WILKERSON, et al.,**

      **Plaintiffs,**

v.                                                                      **Civil Action No. 3:11-CV-1393-O-BK**

**CITIMORTGAGE, INC., et al.,**

      **Defendants.**

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and the district court's *Order of Reference* (Doc. 3), this case has been referred to the United States Magistrate Judge for pretrial management. The cause is now before the Court for a recommendation on Defendants' *Rule 12(b)(6) Motion to Dismiss.* (Doc. 5). For the reasons discussed below, the Court recommends that the motion be **GRANTED IN PART AND DENIED IN PART**.[1]

**BACKGROUND**

Liberally construing their complaint, Plaintiffs brought this *pro se* case in state court against Defendants Citimortgage, Inc. and the Federal Home Loan Mortgage Corporation ("Fannie Mae") in connection with the foreclosure of their home. They allege that in January 2003, they purchased the subject property, executed a note payable to Service First Mortgage Corporation and also executed a deed of trust to secure the payment of the note. (Doc. 1-3, Exh.

---

[1] Although Defendants have moved to dismiss Plaintiffs' purported claim under the Texas Deceptive Trade Practices Act (DTPA), Plaintiffs do not appear to raise such a claim in their complaint and state in response to Defendants' motion that they have not brought a cause of action under the DTPA. (Doc. 5 at 12-14; Doc. 12 at 11). Accordingly, the Court will not address Defendants' arguments on that point.

C-3 at 3). Plaintiffs contend that in January 2011, Defendant Citimortgage, the substitute trustee and servicer of the loan, provided them a notice of default and acceleration of the maturity of their mortgage, and notified them that a substitute trustee sale would occur on March 1, 2011. (*Id.* at 4, 9). Plaintiffs maintain that the notice of the substitute trustee sale was executed on February 17, 2011. (*Id.* at 3). Moreover, they claim that on February 24, 2011 they submitted to Citimortgage a written request for inspection of the original promissory note and offered to pay off the note. (*Id.*). Plaintiffs claim that on February 28, 2011, Citimortgage verbally informed them that it was suspending the foreclosure sale pending review of Plaintiff's February 24 request. (*Id.*). Nevertheless, the foreclosure sale took place on March 1, 2011, less than 21 days after they were given notice of the substitute trustee sale, in violation of Tex. Prop. Code § 51.002(b). (*Id.* at 3-4). Plaintiffs claim that they have since been notified that their property is now owned by Fannie Mae and that they need to vacate it. (*Id.* at 2-3). Plaintiffs note that Defendants filed a forcible detainer action against them in state court, which Plaintiffs lost and have appealed. (*Id.* at 5).

Plaintiffs allege various causes of action in their complaint, namely (1) breach of contract under the Uniform Commercial Code ("U.C.C.") based on Citimortgage's obligation to act in good faith, as well as breach of the deed of trust contract; (2) violation of Texas Property Code § 51.002 because Citimortgage had no right to foreclose on their property; (3) the common law tort of engaging in unreasonable collection efforts; (4) numerous violations of the Texas Debt Collection Practices Act ("TDCPA"); (5) an accounting of all transactions on their mortgage loan; (6) negligent misrepresentation and gross negligence based on Citimortgage's failure to communicate the correct status of Plaintiffs' mortgage loan; (7) a declaratory judgment in their

favor; and (8) to quiet title as to Fannie Mae's assertion that it owns the property.[2] (*Id.* at 6-13).

Defendants removed the case to federal district court and now request dismissal of all of Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). (Doc. 1; Doc. 5).

## APPLICABLE LAW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege enough facts to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 572 (2007). In order to overcome a Rule 12(b)(6) motion, a plaintiff's complaint should "contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995) (quotation omitted). Moreover, the complaint should not simply contain conclusory allegations, but must be pled with a certain level of factual specificity. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir. 2000).

## ANALYSIS

**A.   Breach of Contract**

Citimortgage claims that because Plaintiffs do not allege that they performed or tendered performance under the note and deed of trust, they cannot state a claim for breach of written contract. Moreover, Citimortgage argues, Plaintiffs have not identified any provision of the note or deed of trust that was breached. (Doc. 5 at 3-4). Citimortgage also contends that there is no

---

[2] The only claim Plaintiffs appear to bring against Fannie Mae is to quiet title. Citimortgage is the sole defendant as to Plaintiffs' other causes of action.

implied duty of good faith in the mortgage lending context, and Plaintiffs cannot state a claim for breach of an oral contract because any such contract fails for lack of consideration and indefiniteness. (*Id.* at 4-6).

Plaintiffs respond that the note and deed of trust require Citimortgage to comply with the Texas Property Code, and Citimortgage violated section 51.002 of the code by not providing 21 days notice of the foreclosure sale and not giving Plaintiffs 20 days' written notice of their right to cure the default. (Doc. 12 at 3-4). Next, they urge that Citimortgage owed them a duty of good faith under the Texas U.C.C., which governs the note. (*Id.* at 4-5). Lastly, Plaintiffs contend that they sufficiently pleaded breach of oral contract because Citimortgage made an oral promise not to prematurely foreclose on their home and are estopped from avoiding that promise. (*Id.* at 5-7). In reply, Citimortgage argues, *inter alia*, that a violation of section 51.002 does not support a breach of contract claim because the statute is not a contract between the parties. (Doc. 14 at 2).

Under Texas law, to plead a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract; (2) that he performed or tendered performance under the contract; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages as a result of the breach. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003). In this case, Plaintiffs have not properly pled a cause of action for breach of their note and deed of trust because they do not allege (nor can they, given their admission that they were behind on their mortgage payments) that they performed or tendered performance under the note and deed. (Doc. 1, Exh. C-3 at ¶ 11).

Further, as a matter of law, the Texas U.C.C.'s duty of good faith and fair dealing does

4

not apply to the lender-borrower relationship. *Hall v. Resolution Trust Corp.*, 958 F.2d 75, 79 (5th Cir. 1992); *FDIC v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990).  Thus, Plaintiffs' claim for Citimortgage's breach of their duty to act in good faith and deal fairly also should be dismissed.

Finally, Plaintiffs have failed to adequately plead a valid breach of oral contract claim. Under Texas law, a contract that lacks consideration is unenforceable. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997), *superseded on other grounds by* Tex. Gov't Code §§ 2260.001-008.  Consideration is a bargained-for exchange of promises that involves benefits and detriments to both parties to the contract. *Id.*  Lack of consideration occurs when the contract, at its inception, does not impose obligations on both parties. *See City of the Colony v. North Tex. Mun. Water Dist.*, 272 S.W.3d 699, 733 (Tex. App.—Fort Worth 2008).  Here, Plaintiffs do not allege that they provided any consideration for an oral contract between themselves and Citimortgage that would have required Citimortgage to uphold its purported promise to postpone the foreclosure sale.  Accordingly, Plaintiffs' claim for breach of contract under each of their three theories fails, and that claim should be dismissed.

**B.    Anticipatory Breach of Contract**

As to Plaintiffs' second cause of action, Citimortgage argues that they fail to state a claim for anticipatory breach of contract based on Citimortgage's failure to give them an opportunity to cure their default. (Doc. 5 at 6-7).  In particular, Citimortgage maintains that Plaintiffs have not pled that Citimortgage unconditionally refused to perform or repudiated the contract, and even if it had done so, it would have had just cause due to Plaintiffs' default on the note. (*Id.* at 7).

In response, Plaintiffs claim that Citimortgage specifically repudiated their contractual obligations under the deed of trust by failing to provide them the right to cure in violation of

5

Texas law and without just cause. (Doc. 12 at 7-8).

To properly plead a claim for anticipatory breach of contract in Texas, a plaintiff must show: (1) absolute repudiation of the obligation; (2) lack of a just excuse for the repudiation; and (3) damage to the non-repudiating party. *Gonzalez v. Denning,* 394 F.3d 388, 394 (5th Cir. 2004). Here, Plaintiffs pled facts do not lead to the conclusion that Citimortgage refused to perform under a contract, but rather, that Citimortgage enforced the note and deed of trust by initiating foreclosure proceedings after Plaintiffs defaulted on their mortgage payments. *Steele v. Green Tree Servicing, LLC*, No. 3:09-CV-0603-D, 2010 WL 3565415, *7 (N.D. Tex. Sept. 7, 2010) (holding that plaintiff homeowners could not show anticipatory breach of contract where a reasonable trier of fact could only find that the mortgage loan servicer was attempting to enforce the deed of trust and note by foreclosing on the property). Plaintiffs do not point to a particular contractual provision that they claim Citimortgage violated, and their claim that Citimortgage violated Texas law does not constitute a breach of contract. Therefore, Plaintiffs' claim for anticipatory breach of contract should be dismissed.

**C.     Unreasonable Collection Efforts**

Next, Citimortgage argues that Plaintiffs have failed to state a claim for the common law tort of exerting unreasonable collection efforts because Plaintiffs defaulted on their payment obligations and have not alleged that Citimortgage's actions were harassing, wanton, malicious, and intended to inflict mental anguish and bodily harm. (Doc. 5 at 7-8). Plaintiffs do not respond to Citimortgage's argument as to this cause of action.

The intentional tort of unreasonable collection involves collection efforts that "amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental

anguish and bodily harm." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.–Dallas 2008). A cause of action for this tort typically is only viable if a lender attempts to collect a debt that is not owed. *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (collecting state and federal cases). In the present case, however, Plaintiffs essentially admit that they defaulted on their payment obligations and make no allegation that the mortgage note has been fully paid. Moreover, even if Plaintiffs were not in default of their debt, they did not allege any facts that would show that Citimortgage engaged in a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm. *Id.* at 635-36 (collecting cases). Accordingly, this cause of action should be dismissed.

**D.     Violations of the Texas Debt Collection Practices Act ("TDCPA")**

Citimortgage argues that Plaintiffs cannot state a claim under the TDCPA because they do not describe (1) any legally prohibited action taken by Citimortgage; (2) how Citimortgage misrepresented the debt they owed; (3) how Citimortgage attempted to collect charges not expressly authorized by the note or deed of trust; or (4) how Citimortgage used any type of false representation or deceptive means to collect a debt from Plaintiffs. (Doc. 5 at 9-10). Moreover, Citimortgage notes that it is not a "debt collector" as defined by the TDCPA. (*Id.* at 11-12). Due to these failures, Citimortgage alleges, Plaintiffs' claim for breach of the TDCPA fails. (Doc. 5 at 9-10).

In their complaint, Plaintiffs argued that Citimortgage, a "debt collector," violated the following provisions of the TDCPA: (1) using a deceptive means to collect a debt, in violation of Tex. Fin. Code § 392.304(a)(19); (2) misrepresentation of the character, extent, or amount of a consumer debt, in violation of Tex. Fin. Code § 392.304(a)(8); and (3) collecting interest or

7

another fee incidental to the obligation owed unless the other fees were expressly authorized, in violation of Tex. Fin. Code § 392.303(a)(2).  (Doc. 1-3, Exh. C-3 at 10).

In their response to Citimortgage's *Motion to Dismiss*, Plaintiffs newly argue that Citimortgage violated section 392.301(a)(8) of the TDCPA, which prohibits a debt collector from using threats or coercion to take an action prohibited by law, in that Citimortgage sent Plaintiffs notices of foreclosure and set a foreclosure sale date, even though Texas Property Code section 51.002(d) and the deed of trust prohibited such acceleration and foreclosure.[3]  (Doc. 12 at 8-9). They also contend that Citimortgage was prohibited by law and contract from foreclosing on the property when it did because Citimortgage's right to accelerate and foreclose had not matured due to its non-compliance with the Texas Property Code.  (*Id.*).  Plaintiffs also contend that Citimortgage is a "debt collector" as defined in the TDCPA because that term includes creditors who are collecting their own debt.  (*Id.* at 9-10).

The TDCPA prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts.  *See Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986).  Moreover, despite Citimortgage's arguments to the contrary, "foreclosure actions inevitably involve a debt collection aspect" that is actionable under the TDCPA.  *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 732 (N.D. Tex. February 10, 2011) (Fitzwater, J.).  A "debt collector" is one "who directly or indirectly engages in debt collection."  TEX. FIN. CODE § 392.001(6).  The TDCPA's definition of "debt collectors" encompasses creditors collecting their own debts.  *Monroe v. Frank*, 936 S.W.2d 654, 659-60 (Tex.App.– Dallas 1996).

---

[3] Even though Plaintiffs arguably waived the other TDCPA claims that they raised in their complaint by not discussing them in their response to the *Motion to Dismiss*, because they are proceeding *pro se*, the Court will address those claims on the merits.

Under Tex. Prop. Code § 51.002(b), notice of a foreclosure sale must be given at least 21 days before the date of the sale. Additionally, as provided by Tex. Prop. Code § 51.002(d), a mortgage servicer must give a property owner 20 days to pay the past due installments before it can deliver a notice of foreclosure sale under section 51.002(b).

   *1. Sections 392.303 and 392.304*

Section 392.303(a)(2) provides that debt collectors cannot collect or attempt to collect incidental charges unless they are expressly authorized by the agreement creating the obligation or are otherwise legally chargeable. Section 392.304 prevents a debt collector's use of deceptive representations in an attempt to collect a debt, including (1) misrepresenting the character or amount of the debt; (2) misrepresenting the consumer's debt status in a judicial proceeding; or (3) using any other false representation. Tex. Fin. Code §§ 392.304(a)(8), (19).

Plaintiffs have not set forth in their complaint any *specific* facts demonstrating that Citimortgage attempted to collect interest or other charges from them even though such charges were not expressly authorized by the note and/or deed of trust or otherwise legally chargeable. Thus, they have failed to state a claim under section 392.303(a)(2) of the TDCPA. *Collins,* 224 F.3d at 498; Doc. 1-3, Exh. C-3 at 5, 10 (alleging only that Citimortgage "added additional charges to Plaintiffs'" account and "imposed wrongful charges on Plaintiffs' mortgage account").

Similarly, while section 392.304 of the TDCPA prevents a debt collector from misrepresenting the character or amount of a debt or making false representations to collect a debt, Plaintiffs again have alleged only conclusory facts to support this claim. *Collins,* 224 F.3d at 498; Doc. 1-3, Exh. C-3 at 6 (generally alleging that Citimortgage has "made numerous demands and representations concerning the amounts allegedly owed on Plaintiffs' mortgage

loans which were false, inaccurate, and were made recklessly, and with total disregard for the truth or validity thereof").

    *2.*    *Section 392.301(a)(8)*

Plaintiffs' final TDCPA claim, under section 392.301(a)(8), fares better, however. Section 392.301(a)(8) of the TDCPA, prohibits a debt collector from "threatening to take an action prohibited by law." In the *Biggers* case cited above, the plaintiffs contended, as Plaintiffs do here, that their lender failed to give them sufficient notice of default and an opportunity to cure and gave inadequate notice of the foreclosure sale, in violation of Tex. Prop. Code § 51.002. *Biggers*, 767 F. Supp. 2d at 730. The court in *Biggers* determined that the plaintiffs had stated a claim under section 392.301(a)(8) by alleging that the lender's substitute trustees issued notices of sale without giving an earlier notice of default and 20 days to cure before issuing a notice of sale, which was a violation of Tex. Prop. Code § 51.002(d). The court also noted that if the plaintiffs' home already had been foreclosed on, they would have had another cause of action under section 392.301(a)(8) based on the lender's failure to provide 21 days notice of the foreclosure sale, as required by Tex. Prop. Code § 51.002(b). *Id.* at 732-33.

The *Biggers* case cited above is on point with the case at bar, and the undersigned finds it persuasive. Liberally construing their pleadings, Plaintiffs allege that (1) Citimortgage sent them a notice of default and acceleration of maturity of note on January 18, 2011, but did not advise Plaintiffs that they had 20 days to cure the default before Citimortgage delivered a notice of foreclosure sale, in violation of Tex. Prop. Code § 51.002(d); (2) Citimortgage executed its notice of foreclosure sale on February 17, 2011, and (3) the foreclosure sale took place on March 1, 2011, only 12 days later, in violation of Tex. Prop. Code § 51.002(b). (Doc. 1-3, Exh. C-3 at

3-4; Doc. 12 at 8-9).

Taking these facts as true, Plaintiffs have stated a claim for a violation of TDCPA section 392.301(a)(8) because they have sufficiently pled that Citimortgage threatened to, and did, take actions against them which were prohibited by the Texas Property Code. *Biggers*, 767 F. Supp. 2d at 732-33. Plaintiffs also have suffered damages as required to maintain an action under the civil remedies provision of the TDCPA because, although they remain in the property, they plead that title to the property has passed to Fannie Mae. This case is thus distinguishable from the case Citimortgage cites in which the plaintiffs were suing for *attempted* wrongful foreclosure, rather than an actual foreclosure. *Baker v. Countrywide Home Loans, Inc.*, 2009 WL 1810336 at *4 (N.D. Tex. 2009).

E.  **Negligence Causes of Action**

Citimortgage next urges the Court to dismiss Plaintiffs' claims for negligent misrepresentation and gross negligence, arguing that these claims are barred by the economic loss rule because this dispute centers on the parties' contract. (Doc. 5 at 14-15). Citimortgage also contends that Plaintiffs' negligence claims fail on the merits. (*Id.* at 15-17).

Plaintiffs respond that their negligence claims are not barred by the economic loss rule because they pled more than just "economic harm" in that they suffered personal injuries, including clouded title, harm to their credit, mental anguish, emotional distress, anxiety, depression, humiliation, and the value of lost time. (Doc. 12 at 13). They also contend that their negligence claims are properly pled. (*Id.* at 14-15).

11

*1.     Economic Loss Rule*

Under Texas law, the economic loss rule precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties. *See Southwestern Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991). Nevertheless, if the defendant's conduct would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff may bring a tort claim in addition to a claim for breach of contract. The economic loss rule applies to real estate transactions. *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).

To determine whether a plaintiff may recover on a tort theory, courts look at the nature of the plaintiff's loss. *See Sterling Chems, Inc. v. Texaco, Inc.*, 259 S.W.3d 793, 796-98 (Tex. App–Houston [1st Dist.] 2007). A claim in tort will not lie when the only injury alleged is for economic damages that are caused by the failure to perform a contract. *Id.* Nevertheless, a plaintiff may bring a tort claim if he can establish that he suffered an injury independent of the economic losses caused by the breach of contract. In *Southwestern Bell*, the Texas Supreme Court ruled that a telephone company's mistaken deletion of the plaintiff's advertisement sounded only in breach of contract, rather than tort, because the plaintiff sought damages for breach of the duty owed by the telephone company to the plaintiff pursuant to their contract. 809 S.W.2d 493, 494. The court distinguished that situation from a case wherein the defendant improperly repaired the plaintiff's water heater, causing the plaintiff's house to burn down. *Id.* (discussing *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex. 1947)).

In *Scharrenbeck*, the state's highest court found that the plaintiff had a cause of action in contract, due to an implied duty on the defendant to make the repairs properly, as well as in

12

negligence, because the defendant also had a duty to use reasonable diligence in making the repairs so as not to injure the plaintiff's property. 204 S.W.2d at 510-11. In *Century Surety Co. v. Hardscape Const. Specialties, Inc.*, 578 F.3d 262, 270 (5th Cir. 2009), the Fifth Circuit Court of Appeals noted that while the plaintiff's cause of action for faulty pool and deck construction sounded solely in contract, if the plaintiff had alleged that the faulty construction *separately* damaged its business interests or adjacent property, it might have had a tort cause of action as well.

In their complaint, Plaintiffs allege that Citimortgage failed to use reasonable care in communicating the correct status of their mortgage loan, which Plaintiffs were damaged by when Citimortgage sold their home. (Doc. 1-3, Exh. C-3 at 12). They seek damages for mental anguish and harm to their credit history, among other things. (*Id.* at 13). Based on these allegations, as well as the *Scharrenbeck* and *Hardscape Const. Specialties* cases, the Court cannot conclude that Plaintiffs' negligence claims are barred by the economic loss rule. Accordingly, the Court must address those claims on the merits.

    *2.    Negligent Misrepresentation*

A claim for negligent misrepresentation requires a showing that: (1) the defendant made a representation in the course of a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered a monetary loss by justifiably relying on the representation. *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 687 n.24 (Tex. 2002). A claim for negligent misrepresentation under Texas law contemplates that the "false information" provided by the

13

defendant is a misstatement of *existing* fact. *Clardy Manufacturing Co. v. Marine Midland Business Loans, Inc.*, 88 F.3d 347, 357 (5th Cir. 1996) (emphasis in original). Thus, if a defendant's representation was a misstatement as to a future action to be taken by defendant, that is not actionable because a promise to do or refrain from doing something does not concern an existing fact. *Id.* at 358; *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007) (same). This is to be contrasted with the case cited by Plaintiffs in which a lender negligently misrepresented to a potential borrower that the lender actually had approved their loan. *Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 441-42 (Tex. 1992).

    Plaintiffs cannot state a claim against Citimortgage for negligent misrepresentation based on Citimortgage's alleged promise to postpone its foreclosure proceedings because that representation was not as to an existing fact. *Clardy Manufacturing Co.*, 88 F.3d at 357-58. Plaintiffs argue in response to Defendant's dismissal motion that Citimortgage also misrepresented to the Dallas County Court Clerk that it had authority to conduct the foreclosure sale, when in fact it did not. (Doc. 12 at 14). That claim is not actionable either because the alleged misrepresentation was not made to Plaintiffs and they thus did not rely on it to their detriment. *Henry Schein, Inc.*, 102 S.W.3d at 687 n.24.

    *3. Gross Negligence*

    In order to state a claim for gross negligence, Plaintiffs must show that (1) viewed objectively from the actor's standpoint, the act or omission complained of creates an extreme degree of risk of seriously harming others, and (2) the actor had actual, subjective awareness of the risk, but chose to proceed in conscious indifference to the rights, safety, or welfare of others. *See Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001).

Citimortgage contends that Plaintiffs' claim fails because they (1) cannot show a duty of care owed to them by Citimortgage other than that required under the note and deed of trust, and (2) have not alleged that Citimortgage's actions created "an extreme degree of risk of harm" to Plaintiffs. (Doc. 5 at 17). Plaintiffs maintain that Citimortgage's actions were negligent, but notably they have not argued that its actions created an extreme risk of harm to them. (Doc. 12 at 14-15).

The Court finds persuasive Citimortgage's argument that it did not owe a duty of care to Plaintiffs separate from that contained in the parties' contract. *See FDIC v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990) (noting that the relationship of mortgagor and mortgagee does not ordinarily involve a duty of good faith); *Coleman v. Bank of America, N.A.*, 2011 WL 2516169 *1 (N.D. Tex. 2011) (holding that Texas does not "recognize a common law duty of good faith and fair dealing in transactions between a mortgagee and mortgagor, absent a special relationship marked by shared trust or an imbalance in bargaining power"); *Watson v. Citimortgage, Inc.*, __F.Supp.2d__, 2011 WL 4526980 *9-10 (E.D. Tex. 2011) (same). Further, Citimortgage correctly points out that Plaintiffs have not alleged that its actions created an extreme risk of harm. *See Lee Lewis Const., Inc.*, 70 S.W.3d at 785. The undersigned thus recommends that Plaintiffs' claim of gross negligence be dismissed.

**F.      Quiet Title and Trespass-to-Try-Title Claims**

Defendants urge that Plaintiffs' complaint alleges only in conclusory fashion that Defendant Fannie Mae's "claim to ownership and possession of the Property is improper." They contend that the petition fails to allege any plausible facts explaining why Plaintiffs' title is purportedly superior to Fannie Mae's documented title. (Doc. 5 at 18).

15

Plaintiffs respond that they have pled facts to show that their title is superior to that of Fannie Mae in that they pled that (1) Citimortgage violated the statutorily and contractually required notices of default and opportunity to cure; (2) Citimortgage's right to accelerate and foreclose was improper because of such failure, and thus the foreclosure sale was void; and (3) because the foreclosure sale was void, no title transferred to Fannie Mae. (Doc. 12 at 15-16).

A trespass-to-try-title action is the exclusive remedy for parties to resolve competing claims to real property. *See* TEX. PROP. CODE § 22.001. Any suit that involves a dispute over title to land is, in effect, an action in trespass to try title, regardless of whether legal or equitable relief is sought. *Jordan v. Exxon Corp.*, 802 S.W.2d 880, 883 (Tex.App.–Texarkana 1991). To prevail on a trespass-to-try-title claim, a party must: (1) prove a regular chain of conveyances from the sovereign; (2) establish superior title out of a common source; (3) prove title by limitations; or (4) prove title by prior possession coupled with proof that possession was not abandoned. *Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004). Relatedly, the principal issue in a suit to quiet title is the existence of a cloud that a remedy in equity will remove. *See Bell v. Ott*, 606 S.W.2d 942, 952 (Tex.Civ.App.–Waco 1980). The plaintiff's goal in such an action is to have the defendant's claims to the property declared to be unfounded. *See Temple Trust Co. v. Logan*, 82 S.W.2d 1017, 1019 (Tex.Civ.App.– Amarillo 1935).

In their complaint, Plaintiffs alleged that their title claim was superior to that of Fannie Mae because the foreclosure of their home was void due to Citimortgage's illegal acts. (Doc. 1-3, Exh. C-3 at 13); *Martin*, 133 S.W.3d at 265. A purchaser of property at a foreclosure sale obtains only such title as the trustee actually had authority to convey. *First Southern Properties, Inc. v. Vallone, Tex.*, 533 S.W.2d 339, 341 (Tex. 1976). Further, several Texas courts have held

that where a bank did not strictly comply with the notice requirements of Tex. Prop. Code § 51.002, as is alleged to be the case here, the resulting foreclosure sale may be void. *Lido Intern., Inc. v. Lambeth*, 611 S.W.2d 622, 624 (Tex. 1981); *Shearer v. Allied Live Oak Bank*, 758 S.W.2d 940, 942 (Tex. App.–Corpus Christi 1988); *Mitchell v. Texas Commerce Bank - Irving*, 680 S.W.2d 681, 682 (Tex. App. –Fort Worth 1984). Because, as discussed above, Plaintiffs have stated a claim under TDCPA section 392.301(a)(8) based on Citimortgage's apparent violations of Tex. Prop. Code §§ 51.002(b), (d), Plaintiffs' trespass-to-try-title and quiet title actions should not be dismissed.

**G.     Accounting**

Citimortgage argues that Plaintiffs' request for an accounting is remedial in nature and cannot survive because they have no viable underlying causes of action. (*Id.* at 19-20). Plaintiffs respond that their request for an accounting is a remedy they seek, not a separate cause of action subject to dismissal. (Doc. 12 at 17).

"An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Michael v. Dyke*, 41 S.W.3d 746, 754 (Tex.App.–Corpus Christie, 2001), abrogated on other grounds as recognized in *Buck v. Palmer*, 2010 WL 5167704 (Tex.App.–Corpus Christi 2010, pet filed March 4, 2011). Although Plaintiffs' complaint originally appeared to seek an accounting in equity, they state in their response to Defendants' *Motion to Dismiss* that they are merely asserting accounting as a remedy. Accordingly, the request for an accounting is not a cause of action that is subject to dismissal under Rule 12(b)(6). *Michael*, 41 S.W.3d at 754.

**H.        Declaratory/Injunctive Relief**

Defendants next argue that Plaintiffs' request for a declaratory judgment under Chapter 37 of the Texas Civil Practice and Remedies Code is procedurally improper because that chapter is inapplicable in federal court. (Doc. 5 at 19). On the merits, Defendants argue that Plaintiffs' request is remedial in nature and cannot survive because they have no viable underlying causes of action. (*Id.* at 19-20). Plaintiffs respond that their request for declaratory relief is merely a remedy they seek, not a separate cause of action. (Doc. 12 at 17).

In their state court complaint, Plaintiffs sought a declaratory judgment that Citimortgage had violated the deed of trust and note, as well as Tex. Prop. Code § 51.002(d), and that the foreclosure sale should be rescinded. (Doc. 1-3, Exh. C-3 at 12). Liberally construing their *pro se* complaint in light of the removal of their case to federal court, they seek a declaratory judgment under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. That Act provides that any federal court may declare the rights and other legal relations of any interested party. However, the availability of a declaratory judgment depends upon the existence of a judicially remediable right. *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). In this case, Plaintiffs' request for declaratory relief depends on their viable claim that Citimortgage violated TDCPA section 392.301(a)(8). Accordingly, Plaintiffs' request for declaratory relief should not be dismissed. *Watson*, __F.Supp.2d__, 2011 WL 4526980 *9-10 (refusing to dismiss the plaintiff mortgagors' declaratory judgment action because plaintiffs had stated claims against lender for, *inter alia*, a TDCPA violation).

## CONCLUSION

For the reasons set forth above, Defendants' *Rule 12(b)(6) Motion to Dismiss* (Doc. 5) should be **GRANTED IN PART AND DENIED IN PART**.

**SO RECOMMENDED** October 24, 2011.

                                             RENÉE HARRIS TOLIVER
                                             UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                             RENÉE HARRIS TOLIVER
                                             UNITED STATES MAGISTRATE JUDGE